On the Merits.
PROYOSTY, J.
Plaintiff’s husband, for whose death the present suit in damages is brought, was standing in the front vestibule of one of the Jackson avenue cars of the defendant company, to the left of the motorman, as the car was going towards the river. He was riding free, as an employé going to his work, and not as an ordinary passenger. The motorman saw in the next block, 160 feet or so ahead, on the dirt road to his right, a covered wagon coming towards him, or in the direction of the lake, at a trot, apparently without a driver. Noticing the absence of a driver, he turned off his current and put on his brake, so as to slacken speed and have his ear under control. When the horse and the car got within about 40 feet of each other, the horse started into a gallop. Seeing this, the motorman put on his brake hard to stop the car. When the horse and the car were about to pass each other, the horse suddenly turned towards the car and plunged right into its front vestibule, shattering the glass and wrecking things generally. The shaft of the wagon struck plaintiff’s husband and killed him. The motorman was thrown backward into the car through the open door at his back. The car went on 80 or 90 feet further, carrying the horse and the shafts of the wagon on its platform. The wagon was upset, and turned around from facing downtown to -facing uptown. The horse was badly injured, and died within a few hours. The owner, who was a grocer, used him for delivering his groceries at the houses of his customers, and would leave him standing unhitched in the street while he went in to deliver the groceries, as the animal was perfectly gentle and not afraid of cars, automobiles, or anything, and was trained to stand unhitched, and was in the habit of doing so. That day the horse had been left unhitched, as usual, in *43 the street, a block from where the accident happened, while the owner went in to transact his business, and had started off. What caused this unusual conduct on his part, and what caused him to change his gait into a gallop, and what caused him to turn suddenly and- jump into the car, no one knows.
This suit is against both the owner of the horse and the railway company. The negligence imputed to the former is in having left the horse unhitched. The negligence imputed to the railway company is in the failure of the motorman to have brought his car to a full stop as soon as he saw the wagon was without a driver. There was judgment below against the defendants in solido fdr $2,000.
This judgment we must affirm as against the owner of the horse. Article 2321, Civ. Code, provides that:
“The owner of an animal is answerable for the damage he has caused.”
Conceding, for the argument, that this article is not to be taken literally, but merely as establishing a presumption of fault on the part of the owner of the animal, such as he may rebut by proof of entire absence of negligence on his part, the defendant in this case, who left his horse unhitched and unattended in the street, is not entirely blameless, no matter how much the animal may have been accustomed theretofore to stand when left in that way.
We find no negligence on the part of the railway company. The horse was moving along the straight road tamely at a trot. Simply because there was no driver was no reason why the motorman should bring his car to a full stop in the middle of a block. It sufficed for him to bring it under full control for an emergency stop, as he did. What difference it would have made if the horse had been coming at a gallop, we need not say, as the motorman did all he could to bring his ear to á full stop the moment he saw the horse break into a gallop. Had the collision occurred at a crossing, it might have been plausibly argued that the motorman should have known that the horse would likeiy turn at the cross-street and might at that point come upon the track, and that, in prevision of this, he should have stopped his-car before reaching that point. But the accident occurred after the horse had passed the cross-street, and before the car had reached it — some 30 feet from the cross-street.
We are not disposed to attach any significance to the circumstance that the car moved some 80 or 90 feet beyond the place of the collision before coming to a full stop. The evidence shows that both the brake and the controller were knocked down, and that in all likelihood the brake was thereby released and the current restored. As a matter of fact, the car stopped only after the conductor, noticing that it was going on, took off his trolley for the purpose of cutting off the power.
Judgment set aside and suit dismissed as to defendant railway company; affirmed as to defendant Robert Powell. Costs of appeal to be paid one-half by plaintiff, and one-half by defendant Robert Powell.